UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DALIA RASHDAN (MOHAMED), | Case No:  C 10-00634 SBA |
| Plaintiff, | **AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| MARC GEISSBERGER, EUGENE LABARRE, AI B. STREACKER, FOROUD HAKIM, NADER A. NADERSHAHI, PATRICK J. FERRILLO, JR., LEIGH ANDERSON, JEFF MILES, DANIEL J. BENDER, LOLA GIUSTI, CRAIG YARBOROUGH, DOES 1-50, AND UNIVERSITY OF THE PACIFIC, | Docket 10 |
| Defendants. | |

Plaintiff Dalia Rashdan, a former dental student the Dugoni School of Dentistry ("Dugoni School") at the University of the Pacific ("the University"), brings the instant action against the University and eleven individual instructors and administrators at the Dugoni School (collectively "Individual Defendants") claiming that she was subjected to discrimination on account of her national origin (Egyptian).  The parties are presently before the Court on the Individual Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 10.  Having read and considered the papers submitted and the record in this action, and being fully informed, the Court hereby GRANTS the motion, for the reasons that follow.  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court adjudicates the instant motion without oral argument.

# I.      BACKGROUND

## A.      FACTUAL SUMMARY

Plaintiff, a female Egyptian-American, attended the Dugoni School from 2007 to 2009, with the goal of obtaining a D.D.S. degree.  Compl. ¶¶ 4, 19.  She alleges that the University and its faculty, principally Dr. Marc Geissberger, Chair of the Department of Restorative Dentistry, discriminated against her on the basis of her national origin.  The lengthy and discursive allegations in her Complaint generally pertain to the following conduct or incidents:  (1) the disparagement of her work by Dr. Geissberger as "Third World Dentistry" and being called "TW" (short for "Third World") by another instructor; (2) the alteration of her official transcript to make it appear that she did not complete and/or take certain courses; and (3) the interference with her ability to graduate and earn her D.D.S degree.  These incidents are summarized below.

### 1.      "Third World Dentistry" Comments

In January 2009, Dugoni School faculty member Dr. Warden Noble was adjusting a master cast for a patient's crown while at the Dugoni School's dental clinic.  Id. ¶ 27.  Dr. Noble expressed concern about having the crown seat properly, and informed Plaintiff that he would adjust the patient's tooth before seating the crown.  Id.  In March 2009, the patient returned to the dental clinic to have the crown seated.  Id.  Since Dr. Noble was not present, Plaintiff decided to seat the crown on her own.  Id. ¶ 28.  After being unable to do so, Plaintiff communicated the problem to another faculty member, Dr. Jessie Vallee, who, in turn, spoke to Dr. Geissberger.  Id.  When Dr. Valle returned, he told Plaintiff that Dr. Geissberger was upset that she had not told him that Dr. Noble had stated that *he* was planning on adjusting the patient's tooth.  Id.  After the patient left, Plaintiff walked over to where Dr. Geissberger was standing.  Id. ¶ 29.  In the presence of Dr. Valle and another unidentified faculty member, Dr. Geissberger characterized her work on the patient as "Third World Dentistry."  Id.

Later, Plaintiff spoke with Dr. Geissberger in his office, and complained that she was offended by his remark.  Id. ¶ 30.  Dr. Geissberger replied that nowhere in the school

syllabus were students taught to adjust a tooth before seating a crown.  Id.  Plaintiff claimed that, in fact, it was Dr. Noble who had proposed adjusting the tooth before seating a crown, and that she did not feel comfortable challenging his authority.  Id.  Dr. Geissberger responded, "It's still Third World Dentistry."  Id.  They debated whether Egypt is, in fact, a third world country.  Id.  At some point after this exchange, Dr. Foroud Hakim, Vice-Chair of the Department of Restorative Dentistry, greeted Plaintiff with, "What's up, TW?"  Id. ¶ 31.  Dr. Hakim continued to greet Plaintiff in that manner whenever he encountered her, including one time in front of Plaintiff's mother, who inquired and was informed what "TW" meant.  Id. ¶¶ 32, 58.

### 2.    Transcript Issues

Plaintiff alleges that in April or May 2009, she received an interim transcript from Daniel J. Bender, Director of Academic Affairs and Registrar at the Dental School.  Id. ¶ 38.  The interim transcript indicated that she had received passing grades in RS 379 (Clinical Restorative Dentistry IIII), RP 396 (Clinical Removable Prosthodontics) and DP 317 (Patient Management & Production III).  Id. ¶ 39.

On December 7, 2009, Plaintiff obtained her official transcript, which erroneously indicated that she had received an "INC" (incomplete) for RS 379, and did not list either RP 396 or DP 317, even though she had completed and passed those courses.  Id. ¶ 40.  Plaintiff alleges that sometime after she received her interim transcript in May 2009, Dr. Geissberger and Mr. Bender somehow "altered" her transcript so that she would receive an "INC" for RS 379, and that Dr. Eugene LaBarre and Dr. Lola Giusti "caused" her official transcript to be altered to make it appear as if she never took RP 396 or DP 317.  Id. ¶¶ 41-46.

In the Spring quarter of 2009, Plaintiff participated in and passed DP 320 (Preparation for State Licensure), a mandatory class for students planning on graduating in 2009.  Id. ¶ 47.  Plaintiff alleges that sometime after she received her interim transcript, Mr. Bender "caused" her official transcript to be altered so that it appeared that she never took or passed DP 320.  Id. 49.

3. **Graduation Issues**

a)     <u>Plaintiff Prepares to Graduate</u>

In the Spring quarter of 2009, some of Plaintiff's classmates received an "A Letter" informing them that they would not be graduating with their class.  <u>Id.</u> ¶ 51.  Others received a "B Letter" which informed the recipient that he or she would not graduate unless corrective measures were undertaken to improve his or her academic performance.  <u>Id.</u> ¶ 53.  Plaintiff denies that she received either type of letter.  <u>Id.</u> ¶¶ 52, 54.

Sometime prior to May 2009, Dr. Patrick Ferrillo, Jr., Dean of the Dugoni School, submitted a Certificate for Graduating Seniors to the Western Regional Examining Board ("WREB").  <u>Id.</u> ¶ 55.  The WREB administers the examination that dental students must pass in order to practice dentistry in the United States.  <u>Id.</u>  Dean Ferrillo certified to the WREB that Plaintiff would complete the requirements for graduation by June 14, 2009.  <u>Id.</u> ¶ 55.  Later in May, Plaintiff took and passed the Patient Assessment and Treatment Planning Exam, Periodontal and Prosthodontics Examination, which are part of the WREB examination.  <u>Id.</u> ¶¶ 57-58.  She also passed the Law and Ethics Examination, which is part of the State of California's dental licensure requirements.  <u>Id.</u> ¶ 60.  On May 13, 2009, Dean Ferrillo sent Plaintiff's mother an invitation to the Dugoni School's graduation ceremony scheduled for June 14, 2009.  <u>Id.</u>

On May 19, 2009, Plaintiff met with Dr. Giusti, her Group Practice Administrator, for her pre-graduation exit interview.  <u>Id.</u> ¶ 71.  During the meeting, Dr. Giusti informed Plaintiff that "no negative comments" had been submitted by any faculty, Department Chairs or administrators or patients.  <u>Id.</u>  Plaintiff was told that she had completed her academic courses satisfactorily and to go to the business office to pick up a "Student Closeout Form."  <u>Id.</u>  Dr. Giusti signed an "Authorization to Begin Clearing Process Form," which facilitated the transfer of patients under her care to other classmates.  <u>Id.</u>  At the conclusion of her exit interview, Plaintiff was informed that she was "good to go" for graduation.  <u>Id.</u>  Relying on her positive exit interview, Plaintiff and her family began packing her belongings for shipment to Egypt, where Plaintiff planned to open her dental

practice after graduation.  Id. ¶ 75.  In addition, Plaintiff took the WREB examination from May 29, 2009, to June 1, 2009.  Id. ¶ 76.

### b)   Plaintiff is Informed That She Will Not Graduate

On or about June 10, 2009, the Student Academic Performance and Promotions Committee ("SAPPC") met to decide which students would be recommended to Dean Ferrillo for graduation.  Id. ¶ 77.  At the meeting, Dr. Geissberger allegedly spoke "disparagingly" of Plaintiff's academic performance, though the Complaint does not specify the comments at issue or what made them disparaging.  Id. ¶¶ 82, 84.  The SAPPC voted 13-0 to recommend to Dean Ferrillo that Plaintiff should not be certified for graduation.  Id.  On the same day, the WREB sent Plaintiff a notice that she had failed the Endodontics part of the examination, but had passed the four other subjects.  Id. ¶ 87.

On June 10, 2009, Plaintiff also received a written notice from Dr. Guisti informing her that she had not been certified for graduation, but that the Dugoni School was offering her the opportunity to continue as "an extended student as part of the Class of 2009."  Id. ¶¶ 89, 91, 94.  The letter set forth the specific requirements Plaintiff would have to meet as an extended student in order to qualify for graduation.  Id. ¶ 94.  Plaintiff alleges that other extended students were not subject to the allegedly stringent requirements imposed upon her.  Id. ¶ 98.  The letter indicated that Plaintiff could appeal the Dean's decision.  Id.  Upon receiving the notice, Plaintiff allegedly suffered a panic/anxiety attack and was taken to a hospital emergency room.  Id. ¶ 90.

The next day on June 11, 2009, Plaintiff filed a Letter of Intent with the Student Appeals Committee to pursue an appeal of the Dean's decision to maintain her as an extended student as a part of the Class of 2009.  Id. ¶ 100.  Plaintiff asked Dr. Leigh Anderson, an instructor and Chair of the Student Appeals Committee, Dr. Bender and Dr. Giusti to inform her of the grounds for the decision by Dean Ferrillo to maintain her as an extended student.  Id. ¶ 101.  They allegedly refused to respond to Plaintiff's inquiry, claiming that the Dean's reasons were "personal and confidential."  Id. ¶ 102.  On June 12, 2009, Plaintiff was notified that her appeal would be heard on June 15, 2009.  Id. ¶ 104.

On June 14, 2009, Plaintiff participated in the graduation ceremony with her classmates, but did not receive her D.D.S. degree.  Id. ¶ 106.

The appeals hearing took place as scheduled on June 15, 2009.  Id. ¶ 107.  Plaintiff avers that her ability to effectively present her case was impeded by Drs. Anderson, Bender and Giusti's purported refusal to disclose the grounds for maintaining her as an extended student.  Id. ¶ 110.  Plaintiff also complains that the appeals process was unfair because the Appeals Committee lacked any students, as required.  Id. ¶¶ 105, 111.  On June 25, 2009, Dean Ferrillo sent Plaintiff a letter notifying her that her appeal had been denied.  Id. ¶ 115.  Upon reading the letter, Plaintiff allegedly suffered another panic/anxiety attack.  Id.

c)      Plaintiff's Tenure as an Extended Student

Plaintiff began her tenure as an extended student on or about July 13, 2009.  Id. ¶ 117.  Under the terms imposed upon her, Plaintiff could perform test cases only on Tuesdays and Thursdays under the supervision of Dr. Geissberger or Dr. Ai B. Streacker, an instructor in the Department of Restorative Dentistry.  Id. ¶ 122.  Id.  Because of these limitations, Plaintiff had difficulty making progress towards completing the extension program during the Summer Quarter, which ran from July 13 to September 21, 2009.  Id. ¶ 124.  Plaintiff complained about this matter to Associate Dean, Dr. Craig Yarborough, who, in turn, communicated her concerns to Dr. Geissberger.  Id. ¶¶ 125-127.  Dr. Geissberger emailed Dr. Yarborough a list of faculty who could oversee Plaintiff's test cases on any day of the workweek during the Fall Quarter, which ran from October 5 to December 14, 2009.  Id. ¶ 128.  The new list of approved supervisors excluded Dr. Geissberger, but included Drs. Hakim and Streacker.  Id. ¶ 129.

On December 3, 2009, Dr. Geissberger informed Plaintiff that he and other faculty members were recommending that she no longer be allowed to work on patients; instead, she would have to work on plastic models, after which they would consider allowing her to return to patients.  Id. ¶ 131.  On December 7, 2009, Dr. Nadar A. Nadershahi, Associate Dean for Academic Affairs, invited Plaintiff to attend an urgent meeting with the SAPCC to discuss Dr. Geissberger's recommendation that she "remediate" on plastic models.  Id.

¶ 132.  Plaintiff believed that so long as Dr. Geissberger and the other faculty members were supervising her as an extended student, she had no reasonable possibility of obtaining her dental degree.  Id. ¶ 133.  On the advice of her psychiatrist, Plaintiff ignored Dr. Nadershahi's invitation, and instead, on December 9, 2009, filed a Request for Absence from School with the Office of Academic Affairs to "permanently" leave to the Dugoni School.  Id. ¶ 135.

## B.   PROCEDURAL HISTORY

On February 12, 2010, Plaintiff filed the instant action alleging the following claims: violation of 42 U.S.C § 1985(3) (first claim for relief)[1]; violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d (second claim for relief); violation of the Unruh Act, Cal. Civ. Code § 51 (third claim for relief); breach of implied contract (fourth claim for relief); breach of the implied covenant of good faith and fair dealing (sixth claim for relief); defamation (seventh claim for relief); tortious interference with a contract or advantageous business relationship or expectancy (seventh claim for relief); intentional infliction of emotional distress ("IIED") (eighth claim for relief); fraud (ninth claim for relief); negligent misrepresentation (tenth claim for relief); and negligence (eleventh claim for relief).

As defendants, Plaintiff has named the University, Dr. Geissberger, Dr. LaBarre, Dr. Streacker, Dr. Hakim, Dr. Nadershahi, Dr. Ferrillo, Dr. Anderson, Dr. Miles, Mr. Bender, Dr. Giusti, and Dr. Yarborough.  She seeks compensatory and punitive damages and injunctive relief.  The Individual Defendants now move to dismiss the causes of action alleged against them; to wit, violation of 42 U.S.C. § 1985(3), violation of Title VI, tortious interference with a contract, defamation, IIED and negligence. Plaintiff and Defendants have filed their opposition and reply, respectively, and the matter is now ripe for adjudication.

---

[1] The Complaint erroneously refers to "§ 1985(c)" as opposed to "§ 1985(3)." Compl. at 25.  Plaintiff acknowledges this obvious error in her opposition brief.  Pl.'s Opp'n at 7.

## II.     LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. The pleadings must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When considering a Rule 12(b)(6) motion, a court must take the allegations as true and construe them in the light most favorable to plaintiff. See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 1951 (quoting Twombly, 550 U.S. at 557). In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005); Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

III.    **DISCUSSION**

      A.    FIRST CLAIM FOR VIOLATION OF 42 U.S.C. § 1985(3)

          1.    **Intracorporate Conspiracy Doctrine**

A claim under 42 U.S.C. § 1985(3) requires the plaintiff to plead and prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).  The plaintiff also must allege sufficient facts showing "a deprivation of a right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever, 978 F.2d at 1536).  In her first claim for relief, Plaintiff alleges that "Defendants GEISSBERGER, HAKIM, BENDER, GIUSTI, NADERSHAHI, YARBOROUGH, those DOES 1-50 on the SAPPC and some DOES 1-50 conspired for the purpose of intentionally depriving … Plaintiff of equal protection of the laws…." Compl. ¶ 139.

Defendants argue that Plaintiff's claim under 42 U.S.C. § 1985(3) is barred by the intracorporate conspiracy doctrine.  Defs.' Mot. at 7.  The Court disagrees.  This doctrine generally provides that employees acting within the scope of their employment cannot be deemed culpable for conspiring with one another or with the entity that employs them. E.g., Meyers v. Starke, 420 F.3d 738, 742 (8th Cir. 2005) ("the intracorporate conspiracy doctrine ... allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy under § 1985").  The doctrine was first developed in the context of antitrust cases under the theory that a corporation cannot conspire to violate antitrust laws "when it exercises its rights through its officers and agents, which is the only medium through which it can possibly act." Nelson Radio & Supply Co. v. Motorola, 200 F.2d 911, 914 (5th Cir. 1952).  In Copperweld Corp. v. Independence Tube

Corp., 467 U.S. 752 (1984), the Supreme Court adopted the doctrine in holding that a
parent corporation and its wholly owned subsidiary were incapable of conspiring under § 1
of the Sherman Act.  Id. at 770-71.[2]  The Court posited that "[a] parent and its wholly
owned subsidiary have a complete unity of interest," and therefore, the actions of the
subsidiary are deemed to be the actions of the parent."  Id.

The Ninth Circuit has not decided whether the intracorporate conspiracy doctrine
applies to civil rights claims brought under § 1985(3).  See Portman v. County of Santa
Clara, 995 F.2d 898, 910 (9th Cir. 1993) (acknowledging split of authority but declining to
resolve the dispute); Rivers v. County of Marin, No. C-09-1614 EMC, 2010 WL 145094, at
*7-8 (N.D. Cal. Jan. 8, 2010) (discussing split of authority and concluding that the
intracorporate conspiracy doctrine does not apply to § 1985(3) claims) (Chen, J.).
Nevertheless, the Ninth Circuit has counseled that application of the doctrine is dependent
upon the type of conduct the statute at issue is intended to proscribe.  Specifically, in
Webster v. Omnitrition Int'l, Inc., a case inexplicably cited by none of the parties, the court
found that the intracorporate conspiracy doctrine was inapplicable to a conspiracy claim
under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(d), because,
unlike the Sherman Act, such conspiracies are within the purview of the statute.  79 F.3d
776, 787 (9th Cir. 1996) ("Since a subsidiary and its parent theoretically have a community
of interest, a conspiracy 'in restraint of trade' between them poses no threat to the goals of
antitrust law-protecting competition.  In contrast, intracorporate conspiracies do threaten
RICO's goals of preventing the infiltration of legitimate businesses by racketeers and
separating racketeers from their profits.") (citing Ashland Oil, Inc. v. Arnett, 875 F.2d
1271, 1281 (7th Cir. 1989)).

Applying the logic of Copperweld Corp. and Webster, the Court finds that the
intracorporate conspiracy doctrine is inapplicable to a claim brought under 42 U.S.C.

_____

[2] Section 1 of the Sherman Act provides, in relevant part, that, "Every person who
shall make any contract or engage in any combination or conspiracy hereby declared to be
illegal shall be deemed guilty of a felony…." 15 U.S.C. § 1.

§ 1985(3).  Originally enacted by the Reconstruction Congress as the Klu Klux Klan Act of 1871, see Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001), § 1985(3) is aimed at "the prevention of deprivations which shall attack the equality of rights of American citizens…."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (internal quotations and citations omitted).  Unlike antitrust conspiracies, which mainly are directed at the anticompetitive and collaborative efforts of businesses, the conspiracy in a § 1985(3) claim is focused on the discriminatory conduct of the individuals involved.  See Griffin v. Breckenridge, 403 U.S. 88, 96 (1971) ("On their face, the words of the statute [42 U.S.C § 1985(3)] fully encompass the conduct of private persons.").  Thus, regardless of whether the defendants were acting as individuals or in the course and scope of their employment, their agreement to deprive another of his or her equal protection rights remains subject to the proscriptions of § 1985(3).  See Wash. v. Duty Free Shoppers, 696 F. Supp. 1323, 1327 (N.D. Cal. 1988) (ruling that the rationale underlying the intracorporate conspiracy doctrine is specific to antitrust conspiracies and thus has no application to a § 1985 claim) (Orrick, J.); accord O.H. v. Oakland Unified School Dist., No. C-99-5123 JCS, 2000 WL 33376299, at *6 (N.D. Cal. April 17, 2000) (Spero, J.).  The Court thus concludes that Plaintiff's first claim under § 1985(3) is not foreclosed by the intracorporate conspiracy doctrine.

### 2.    State Action

As an alternative basis for dismissal, the Individual Defendants contend that Plaintiff's § 1985(3) claim fails on the ground that she has failed to allege facts demonstrating state action.  Defs.' Mot. at 4-5.  Section 1985(3) reaches "not only conspiracies under color of state law, but also purely private conspiracies."  Bray, 506 U.S. at 268 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).  However, "when the alleged conspiracy is aimed at a right that is by definition a right only against state interference," the plaintiff must allege and prove state action.  United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825, 833 (1983); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1273 (10th Cir. 1989) ("In order to state a cause of action under § 1985(3)

based on the Equal Protection Clause, plaintiffs must sufficiently allege state action.")
(citing <u>Scott</u>, 463 U.S. at 831-33).

A claim for violation of an individual's right to equal protection under the
Fourteenth Amendment requires a showing of state action. <u>Scott</u>, 463 U.S. at 831 ("rights
under the equal protection clause itself arise only where there has been involvement of the
State or of one acting under the color of its authority"); <u>Bator v. State of Hawaii</u>, 39 F.3d
1021, 1028 n.7 (9th Cir. 1994) ("a plaintiff must show intentional discrimination *and state
action* for equal protection claims") (emphasis added); <u>see also</u> <u>Gorenc v. Salt River Project
Agricultural Improv. & Power Dist.</u>, 869 F.2d 503, 506 (9th Cir. 1989). In the instant case,
all of the Individual Defendants are alleged to be employees of a private university, and no
facts are otherwise alleged to show state action. As such, Plaintiff has failed to state a
claim under § 1985(3). <u>See</u> <u>Wong v. Stripling</u>, 881 F.2d 200, 203 (5th Cir. 1989) ("Since
[plaintiff]'s complaint does not encompass any form of state action, he has failed to state a
claim under 42 U.S.C. § 1985(3)."); <u>Washington v. Alameda County Soc. Servs.</u>, No. C 06-
5692 SI, 2007 WL 1393766, at *4 (N.D. Cal. 2007) (dismissing § 1985(3) claim predicated
on a violation of the Fourteenth Amendment for failure to allege facts showing state
action). Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's first
claim for relief for violation of 42 U.S.C. § 1985(3). Plaintiff is granted leave to amend
this claim if she can—in good faith and consistent with the requirements of Rule 11 of the
Federal Rules of Civil Procedure—allege facts sufficient to show state action.[3]

## B.   SECOND CLAIM UNDER TITLE VI

Title VI prescribes that "[n]o person in the United States shall, on the ground of
race, color, or national origin, be excluded from participation in, be denied the benefits of,
or be subjected to discrimination under any program or activity receiving Federal financial

---

[3] Plaintiff does not dispute her failure to allege state action, but contends that under
<u>Scott</u>, state action is not required to state a claim under § 1985(3). Pl.'s Opp'n at 10-11.
This is a misinterpretation of <u>Scott</u>, which holds that state action *may* be required
depending on the nature of the underlying right being asserted. <u>See</u> <u>Scott</u>, 463 U.S. at 833.

assistance."  42 U.S.C. § 2000d.  To state a claim for damages under Title VI, plaintiff must allege that (1) the defendant entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance.  See Fobbs v. Holy Cross Health Sys., Corporation, 29 F.3d 1439, 1447 (9th Cir. 1994).  Courts have implied a right of action under Title VI against institutions that receive federal financial aid.  See Alexander v. Sandoval, 532 U.S. 275, 279 (2001).

The Individual Defendants move to dismiss Plaintiff's second claim for violation of Title VI on the ground that only the alleged recipient of federal funds, i.e., the University, is a proper defendant in such a claim.  Defs.' Mot. at 6.  As a threshold matter, the Court notes that is unclear from the pleadings whether the Individual Defendants are, in fact, named as party-defendants in this claim.  Only the University is alleged to have received federal funds and to have intentionally discriminated against Plaintiff.  Compl. ¶¶ 147-48.  Thus, based on the pleadings, the only named and proper defendant in Plaintiff's Title VI claim is the University.  See Shotz v. City of Plantation, 344 F.3d 1161, 1169-70 (11th Cir. 2003) ("the text of Title VI also precludes liability against those who do not receive federal funding, including individuals."); Santos v. Merritt College, No. C-07-5227 EMC, 2008 WL 2622792, at *1 (N.D. Cal. July 1, 2008) (allowing Title VI claim to proceed against the defendant college which allegedly received federal funds, and not its employee).

In an attempt to salvage her claim, Plaintiff contends that the Court should take judicial notice of information disclosed on webpages ostensibly published by the University that Defendant Anderson received grants from the National Institute of Health ("NIH").  Pl.'s Opp'n at 11-12; Pl.'s Request for Judicial Notice at 2, Dkt. 16.  It is well settled, however, that a plaintiff cannot avoid dismissal of a deficiently-pled claim by citing facts in her opposition, where such facts are absent from the pleadings.  See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition motion …, are irrelevant for Rule 12(b)(6) purposes.").  Nor may the Court take judicial notice of these web postings for the truth of the facts asserted therein, i.e., that Defendant Anderson received funds from the NIH.  See

1  Lasar v. Ford Motor Co., 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining to take

2  judicial notice of findings made in a state court proceeding "because they are offering the

3  factual findings contained in the order for the purpose of proving the truth of the factual

4  findings contained therein.").  Even if the Court were to accept as true statements that

5  Defendant Anderson received federal funds from the NIH, Plaintiff has not averred any

6  facts or made any claim that she was the intended beneficiary of the program for which Dr.

7  Anderson allegedly received funding from the NIH.  See Epileptic Found. v. City and

8  County of Maui,  300 F. Supp. 2d 1003, 1011 (D. Hawai'i 2003) (noting that "[t]o prevail

9  on a Title VI claim, however, a plaintiff must prove … that he is an 'intended beneficiary

10 of the federally-funded program the defendants ... participated in'") (citation omitted).

11 Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's second claim

12 for relief, which is dismissed with leave to amend.

13       **C.**     **SIXTH CLAIM FOR DEFAMATION**

14       The elements of a state law claim for defamation are (1) a publication that is

15 (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

16 special damage.  Cal.Civ.Code §§ 45, 46; Taus v. Loftus, 40 Cal.4th 683, 720 (2007).  To

17 be actionable, the false statement must be one of fact rather than opinion.  Gregory v.

18 McDonnell Douglas Corp., 17 Cal.3d 596, 600 (1976).  Whether a statement is fact or

19 opinion is a question of law.  Id. at 601.  The statement at issue must be examined to see if

20 it has a defamatory meaning, or if the gist of the statement has a defamatory meaning.

21 Hofmann Co. v. E.I. Du Pont de Nemours & Co., 202 Cal.App.3d 390, 398 (1988).  The

22 court examines the totality of the circumstances, beginning with the language of the

23 statement itself, followed by consideration of the context in which the statement was made.

24 Baker v. Los Angeles Herald Examiner, 42 Cal.3d 254, 260-261 (1987).

25       The Complaint alleges that Defendants Hakim, Labarre, Ferrillo, Streacker,

26 Anderson, Miles, Giusti and Bender "reported and published to third parties that Plaintiff

27 RASHDAN's performance at the Dugoni School of Dentistry was inadequate, below the

28 standard that would be allowed for her to be certified for graduation, and below the

standard that would allow her to practice dentistry independently."  Compl. ¶ 172.

However, the Complaint fails to articulate any particular statement made by any Individual

Defendant to a third party is that allegedly false and defamatory.  Moreover, statements

regarding a student's academic competence, or lack thereof, are non-actionable statements

of opinion.  See Banks v. Dominican College, 35 Cal.App.4th 1545, 1554 (1995)

(statements regarding plaintiff's unsuitability for a teaching position not actionable); Gould

v. Maryland Sound Industries, Inc., 31 Cal.App.4th 1137, 1154 (1995) (supervisor's

accusation of poor performance clearly a statement of opinion).

Plaintiff argues that Dr. Geissberger's statements to the SAPPC (which was then

considering whether to recommend Plaintiff to the Dean for certification to graduate) could

be construed as factual, as opposed to matters of opinion. Pl.'s Opp'n at 17.  In particular,

Plaintiff argues that she was not on the list of students who were not qualified to graduate;

and that "[s]ince [her] name was NOT on the list, and *if* Defendant GEISSBERGER told

the SAPPC that it was, then his statement was not one of opinion but one of fact…."  Pl.'s

Opp'n at 17 (emphasis added).  At best, Plaintiff has done nothing more than speculate as

to what Defendant Geissberger might have said.  It is axiomatic that a plaintiff cannot

predicate a defamation claim on what *may* have been said as opposed to what was *actually*

said.  Plaintiff simply fails to allege "enough facts to state a claim to relief that is plausible

on its face."  Twombly, 550 U.S. at 570.

Equally unavailing is Plaintiff's attempt to predicate her defamation claim on

allegations that Defendants Geissberger, Labarre and Guisti "communicated *statements of*

*fact* that Plaintiff either failed or did not take those courses…."  Pl.'s Opp'n at 18.  This is

not alleged in the Complaint.  Rather, the pleadings aver that Geissberger, Labarre and

Guisti "caused [Plaintiffs'] official transcript to be altered" to appear that she did not take

and/or complete the courses at issue.  Compl. ¶¶ 41-45.  Plaintiff fails to identify in her

pleadings any particular allegedly false statement of fact by any of these Defendants.

Rather, Plaintiff merely speculates that either Bender altered the transcript or that

Geissberger, Labarre and Giusti were somehow involved.[4]  In the absence of any particular statements made by these individuals, or any showing of publication of such statements to a third party, Plaintiff cannot proceed on her defamation claim against the Individual Defendants.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's sixth claim for defamation, which is dismissed with leave to amend.

> ### D.   SEVENTH CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT

In her opposition, Plaintiff concedes that her seventh cause of action for tortious interference with a contract or advantageous business relationship or expectancy is not viable and that Defendants' motion to dismiss should be granted.  Pl.'s Opp'n at 20.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's seventh claim for relief, which is dismissed without leave to amend.

> ### E.   EIGHTH CLAIM FOR IIED
> #### 1.   Sufficiency of the Allegations

The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress.  Nally v. Grace Cmty. Church of the Valley, 47 Cal.3d 278, 300, 253 (1988).  A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community."  Hughes v. Pair, 46 Cal.4th 1035, 1050-51 (2009) (internal quotations and citations omitted); Mintz v. Blue Cross of Cal., 172 Cal.App.4th 1594, 1609 (2009) (noting that conduct in support of an IIED claim must be "extreme, outrageous, beyond the bounds of decency, atrocious, or intolerable in a civilized society").

---

[4] The entirely speculative nature of her defamation claim is underscored by Plaintiff in her opposition, wherein she argues as follow: "Provided that Registrar Defendant BENDER did not take it upon himself to invent the grades Plaintiff received in those courses after Winter quarter, or to change them unilaterally, it is possible or even likely that Defendants GEISSBERGER, LABARRE, and GIUSTI published to [Bender] that Plaintiff either failed or did not take those courses."  Pl.'s Opp'n at 18.

In her IIED claim, Plaintiff neglects to identify the specific conduct that she alleges was extreme and outrageous.  Rather, she merely incorporates by reference "the allegations of ¶¶ 1-188."  Compl. ¶ 189.  This type of improper "shotgun pleading" does not comport with Rule 8's requirement that the pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); Schwarzer, Tashima & Wagstaffe, <u>Federal Civ.P. Before Trial</u>, § 8.662 at 8-73 (TRG 2009).  Incorporating the preceding 188 paragraphs of the Complaint fails to provide Defendants with "fair notice" of the basis of Plaintiff's IIED claim.  <u>See</u> <u>Erickson</u>, 551 U.S. at 93.  As such, the Court GRANTS Defendants' motion to dismiss Plaintiff's eighth claim for IIED.

### 2.    Leave to Amend

The question remains whether it would be futile to allow Plaintiff leave to amend.  Although Plaintiff's IIED claim does not identify the specific conduct that forms the basis of such claim, Plaintiff contends in her opposition that the following conduct was extreme and outrageous:  (1) Having her work described as "Third World Dentistry;" (2) being called "TW" in front of students, faculty and her mother; (3) manipulation of her transcript; (4) being told four days before graduation that she was not eligible to graduate, despite previously being assured that there were impediments to her graduation; (5) being denied an explanation for her ineligibility to graduate, which precluded her ability to appeal effectively; (6) being held over as a continuation student and supervised by professors who had previously denigrated her; and (7) having to complete her extended studies with unreasonable restrictions that were not imposed on other continuation students.  <u>See</u> Pl.'s Opp'n at 21-23; Compl. ¶¶ 30-31, 38-50, 61, 94-96, 101-102, 122-29.

Plaintiff's allegations, whether considered individually or collectively, fail to state a claim for IIED.  The purported characterization of Plaintiff's work as "Third World Dentistry" and being referred to as "TW," while perhaps insensitive, are not actionable.  <u>See</u> <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 992 (9th Cir. 1991) (no outrageous conduct where supervisor yelled, screamed at and made threatening gestures to employee and told another supervisor to "get rid of the Bulgarian bitch"); <u>Yurick v. Superior Court</u>, 209

Cal.App.3d 1116, 1129 (1989) (noting that conduct that is merely offensive "may be irritating, insulting or even distressing but it is not actionable and must simply be endured without resort to legal redress."). As to the remaining allegations, which arise from and relate to her academic performance, Plaintiff's opposition merely offers a series of rhetorical retorts, asking whether such conduct constitutes "extreme and outrageous conduct?" Pl.'s Opp'n at 21-22. As a matter of law, the Court concludes that the answer is "no." Even if Defendants' alleged actions were unjustified, Plaintiff has failed to demonstrate that their conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Cochran v. Cochran, 65 Cal.App.4th 488, 496 (1998) (citing Rest.2d Torts, § 46, com. d.). Accordingly, the dismissal of Plaintiff's eighth claim for IIED is without leave to amend.

### F.    ELEVENTH CLAIM FOR NEGLIGENCE

To state a negligence claim under California law, the plaintiff must allege facts showing that that defendant "owed [plaintiff] a legal duty, breached the duty, and that the breach was a proximate or legal cause of [plaintiff's] injury." Gonzalez v. Autoliv ASP, Inc., 154 Cal.App.4th 780, 793 (2007). In her eleventh cause of action, Plaintiff alleges that Defendants Ferrillo, Nadershahi, Yarborough, Bender, Geissberger, Labarre, Hakim, Anderson and Giusti, while acting in their "official" capacities on behalf of the University, breached their duty of care and caused her injury. Compl. ¶¶ 27, 207, 208, 210. This claim is meritless. Although Plaintiff has alleged her negligence claim against the Individual Defendants, she expressly alleges that the duties they allegedly breached were undertaken in their "official" capacities as representatives of the University. There are no allegations that any of the Individual Defendants *personally* owed Plaintiff any duty. Since Plaintiff was enrolled with the University, any claim for negligence would therefore lie against the University, not the Individual Defendants. Notably, the University states that it has no objection to granting leave to Plaintiff to amend her negligence claim against the

University.  Defs.' Reply at 10.[5]  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's eleventh cause of action.  Plaintiff is granted leave to amend to allege a claim for negligence against the University only.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.      The Individual Defendants' motion to dismiss is GRANTED.  Plaintiff's seventh claim for tortious interference with a contract and eighth claim for IIED are DISMISSED WITH PREJUDICE as to the Individual Defendants.  Plaintiff's first claim for violation of 42 U.S.C. § 1985(3), second claim for violation of Title VI and sixth claim for defamation are DISMISSED WITH LEAVE TO AMEND to rectify the deficiencies discussed above.  Plaintiff's eleventh claim for negligence is DISMISSED WITH LIMITED LEAVE TO AMEND to name the University as a Defendant in said claim.

2.      Plaintiff shall have fourteen (14) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings.  *Plaintiff is advised that any additional factual allegations set forth in her amended complaint must be made in good faith and consistent with Rule 11.*  In the event Plaintiff fails to file an amended complaint within that time-frame, the § 1985(3), Title VI, defamation and negligence claims will be deemed dismissed with prejudice.  The parties shall meet and confer regarding the sufficiency of the allegations of the First Amended Complaint before Plaintiff files such pleading with the Court.  Failure to do so may result in the imposition of sanctions.

3.      In the event Defendants file a motion to dismiss in response to the First Amended Complaint, the opening and opposition briefs shall be limited to fifteen (15)

---

[5] In their moving papers, Defendants argued that a claim for the negligent provision of educational services is not actionable under California law.  In her opposition, Plaintiff responded that such rule applied only to public, not private, educational institutions, Defendants fail to respond to this purported distinction in their reply, and instead, propose that Plaintiff amend her complaint to direct her negligence claim against the University only.  It thus appears that Defendants have abandoned the argument presented in their moving papers.

1  pages and the reply shall be limited to ten (10) pages.  Otherwise, Defendants shall file their

2  Answer to the First Amended Complaint (or Complaint, if Plaintiff chooses not to file a

3  First Amended Complaint) in accordance with the Federal Rules of Civil Procedure.

4     4.  This Order terminates Docket 10.

5     IT IS SO ORDERED.

6  Dated:  January 14, 2011        _Saundra B Armstrong_

7              SAUNDRA BROWN ARMSTRONG

            United States District Judge